IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANDREW SCHRADER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:20-cv-00500 |
| STORAGE FIVE CLARKSVILLE, LLC, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

This action for personal injury presents claims of negligence and loss of consortium under Tennessee law (*see* Doc. No. 43, Amended Complaint), invoking this Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(3). Currently pending are Motions for Summary Judgment filed separately by each of the four Defendants named in the Amended Complaint: New Century Doors and Building Components, Inc., d/b/a New Century Doors, Inc. ("New Century") (Doc. No. 86); Denver Commercial Builders, d/b/a Reconn Construction Services ("Reconn") (Doc. No. 90); Storage Five Clarksville, LLC ("Storage Five") (Doc. No. 93); and Janus International Group, LLC ("Janus") (Doc. No. 98).

This Memorandum Opinion concerns Janus's Motion for Summary Judgment and associated filings (Doc. Nos. 98–100, 117), and the responsive filings of Plaintiffs Andrew and Lavina Schrader. (Doc. Nos. 111–13, 125.) As explained below, Janus's Motion for Summary Judgment ("Janus's Motion") is **GRANTED**.

## BACKGROUND

As discussed in the Court's Memorandum Opinion and Order denying New Century's motion for summary judgment (Doc. No. 130),[1] this matter arises from an incident that occurred in 2019, when Plaintiff Andrew Schrader ("Plaintiff")[2] was employed by Active Energy Services, LLC ("Active Energy") on a construction project to convert an existing property owned by Storage Five into a storage facility. Active Energy's work on the project involved demolition and general construction and was undertaken pursuant to a subcontract with the general contractor, Reconn. On the morning of June 20, 2019, in an area of the project where Plaintiff was working to erect a wall that adjoined framed-but-unfinished interior storage units, Plaintiff tripped on a piece of wire mesh (which should not have been left on the floor) and fell into a metal angle brace that provided temporary support for the storage-unit frame. The temporary metal brace had been installed sharp-side-up, and Plaintiff severely lacerated his hand and wrist when he instinctively reached out and contacted the angle brace while attempting to break his fall. (*See id.* at 2–9.)

Janus supported its Motion with a Memorandum of Law that attaches evidentiary exhibits including the subcontract between Janus and New Century (Doc. No. 99-2), the contract between Janus and Storage Five (Doc. No. 99-3), and excerpts from the discovery deposition of Janus employee Scott Rabinette. (Doc. No. 99-5.) It also filed a Statement of Undisputed Material Facts required by Local Rule 56.01 (Doc. No. 100), to which Plaintiffs responded. (Doc. No. 113.)

---

[1] Although it is unnecessary for purposes of deciding the instant motion to review the facts pertaining to Plaintiff's injuries and the events leading to them, the Court notes that its Order on New Century's motion contains a statement of such background factual material, to which the reader is generally referred.

[2] Plaintiff Lavina Schrader asserts a claim for loss of consortium resulting from the injury to her husband, Andrew Schrader. (*See* Doc. No. 43 at 20.) The Court uses the singular "Plaintiff" in this Memorandum Opinion to refer to Andrew Schrader, although for clarity his name is used instead of "Plaintiff" in places in proximity to the term "Plaintiffs."

Plaintiffs further supported their response to Janus's Motion with a Memorandum of Law and attached excerpts from various discovery depositions (Doc. Nos. 112-1, -2, -4, -5, -6) including that of Mr. Rabinette. (Doc. No. 112-6.) These filings from the parties to this summary judgment motion comprise "the summary judgment record." The following description of the facts underlying the Motion before the Court is taken from the parties' statement of facts that they agree are undisputed for purposes of Janus's Motion, as well as from the deposition testimony of Scott Rabinette (upon which both parties rely, albeit for different propositions), the substance of which as related herein is not disputed in any way material to the outcome of the Motion.

Although Active Energy was contracted by Reconn to do the demolition and renovation work on the project, Janus was separately contracted by the owner, Storage Five, to provide the labor and materials (including doors, partitions, and related materials) needed for construction of the storage units. (Doc. No. 113, Plaintiffs' Responses to Janus's Statement of Undisputed Facts, at 2 ¶4; *see* Doc. No. 99-3, Contract Between Janus and Storage Five.[3]) Janus subcontracted with New Century to provide the necessary labor to install the storage units. (Doc. No. 113 at 3 ¶ 5; Doc. No. 99-2, Subcontract Agreement.) As part of the Subcontract Agreement (hereinafter, "the Subcontract"), New Century was responsible for "all layout and engineering of its own work" as well as for "clean-up of its own debris on a daily basis." (Doc. No. 113 at 3 ¶¶6–7.) New Century was further responsible for ensuring that its work was performed in compliance with all laws,

---

[3] The contract between Janus and Storage Five contained in the record is nothing more than a purchase order and work order written by Janus and accepted by Storage Five. (*See* Doc. No. 99-3.) The document includes a section listing seven things for "GC to provide," without identifying "GC." (*Id.* at 1.) Those seven things include, *inter alia*, a "dry and clean work area," "adequate lighting to perform work," "MEP work to be install[ed] prior to Janus installation," and "continuous schedule/clear working path." (*Id.*) While the contract expressly incorporates "Janus Terms and Conditions of Sale" (*id.*), those terms and conditions are not a matter of record in this case.

codes, and standards. (Id. at 4 ¶10.) No employee or other representative of Janus left the piece of wire mesh on the floor of the premises for Plaintiff to trip over. (Id. at 5 ¶12.)

Janus employee Scott Rabinette testified at deposition that he visits job sites in the southeastern region and coordinates the timing of Janus's work with other contractors on those sites. (Doc. No. 99-5 at 7.) Because he "cover[s] such a large territory," he "can only get to these jobs every . . . three weeks or month or something like that." (Id. at 8; Doc. No. 112-6 at 5.) Rabinette visited the Storage Five job site twice, once during construction and once when the job was complete. He made his first visit to observe the storage units being installed by New Century and to ensure that the installation was "per Janus standards of quality." (Doc. No. 112-6 at 9–10.) During that initial visit, Rabinette observed storage units being constructed by New Century employees but did not notice whether workers from any other contractors were on site. (Id. at 8–9.) He made his second and final visit when the installation was complete, "to walk through and do a final inspection, making sure that everything was up to Janus standards and, you know, a good finished product." (Id. at 5; Doc. No. 99-5 at 8.) While such a final walk-through may result in the generation of "a punch list" to address remaining needs (Doc. No. 99-5 at 10; Doc. No. 112-6 at 6), there is no indication that Rabinette had to address any problems with work or work safety on the Storage Five job site. He confirmed that if a site visit revealed "indications . . . that suggested [a subcontractor was] not doing [the work] in a workmanlike manner or doing it in an unsafe manner," he would take steps to have that subcontractor removed. (Doc. No. 99-5 at 11.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[4] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish

---

[4] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

Where, as here, the basis for jurisdiction is diversity of citizenship of the parties, the Court applies the substantive law of the forum state—in this case, Tennessee. *Corley v. Wal-Mart Stores East, LP*, 637 F. App'x 210, 211 (6th Cir. 2016). Under Tennessee law, to establish a claim for negligence, Plaintiffs must prove: (1) a duty of care owed by Janus to Andrew Schrader; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *See York v. Hilton Worldwide, Inc.*, No. 2:11-CV-3033-JPM-CGC, 2013 WL 2948443, at *3 (W.D. Tenn. June 14, 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). Janus's summary judgment burden, then, is initially to identify portions of the record that demonstrate the absence of a genuine dispute over material facts concerning one or more of these elements, and then to demonstrate that in the absence of such factual issue(s), it is entitled to judgment as a matter of law.

In negligence cases, "the initial focus is on whether a duty exists[.]" *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012). "The existence of a duty is a question of law for the court[.]" *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). More precisely, the Court must determine whether the facts in evidence show that the parties stand in such a relationship that, if the relationship is ultimately established before the trier of fact, the defendant will owe a duty of care to the plaintiff as a matter of law. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869–70 (Tenn. 1993) (quoting *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 859 (Tenn. 1985)); *see Garcia v. Norfolk S. Ry. Co.*, 266 S.W.3d 917, 922 (Tenn. Ct. App. 2008) (quoting *Kelley v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 598 (Tenn. 2004)). Janus argues that Plaintiffs' case fails at this threshold element of duty.

As an initial matter, the Court notes that Janus repeats New Century's mistake of relying on cases that establish the legal standards for determining the duty of a property/premises owner to an invitee or other person legally on the property. Clearly though, the relationship between Plaintiff and Janus, like the relationship between Plaintiff and New Century, was not that of a business invitee to a property owner. Because Janus is not the owner or operator of the property where Plaintiff was injured, but merely a supplier of materials and (via subcontract) labor on the same job, it has the same baseline duty to Plaintiff as all "[m]embers of a civil society" owe to one another: "to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 531 (Tenn. Ct. App. 2011) (quoting *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008)); *see Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (conducting oneself in a way that "involve[es] unreasonable danger to others" is "[t]he core of negligence") (quoting W. Page Keeton, *Prosser and Keaton on the Law of Torts* § 31, at 169 (5th ed. 1984)).

As to whether Janus had any additional, more particular duty to Plaintiff upon which to base liability in negligence, Plaintiffs point to the Subcontract defining Janus's role in the project, largely basing their argument against summary judgment on that document. And rightly so. In Tennessee, "courts addressing situations where an employee of a subcontractor is injured at a workplace have looked to, among other things, the contracts governing the relationships between the landowners, prime contractors, and subcontractors to examine the scope of parties' respective duties." *Thompson v. Southland Constructors*, No. M2019-02060-COA-R3-CV, 2020 WL 6538821, at *4 (Tenn. Ct. App. Sept. 2, 2020) (citing, *e.g.*, *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65–68 (Tenn. Ct. App. 1992)). Following this line of tort cases, courts adjudicating an issue between a plaintiff and a defendant who do not have a contract with one another are not called

upon to *construe* any contracts between other parties to the project, but merely to consult the terms of such contracts to determine whether they support a common-law tort duty to the plaintiff—*i.e.*, a "socially-imposed obligation to use care"—in addition to whatever duties they specifically impose upon the contracting parties. *See generally Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) (discussing differences between tort duties and contract duties in a construction case).

Plaintiffs argue that Janus, in subcontracting with New Century for the installation of the storage units, retained specific supervisory authority over New Century's performance of the work and maintenance of the job site. Plaintiffs have clarified that their claim against Janus is based on injury resulting from Janus's allegedly negligent failure to supervise New Century's work, not on any assertion of Janus's vicarious liability for the negligence of New Century or any theory of products liability concerning the Janus-manufactured materials used to build the storage units. (*See* Doc. No. 125 at 2–3.) The Subcontract provisions upon which Plaintiff relies are as follows:

    **A. <u>GENERAL:</u>**

        . . .

    6.    Subcontractor [New Century] shall cooperate fully with the general instructions and general directions of the Contractor [Janus] and, if applicable, shall coordinate its work with the work of other subcontractors.
        . . .

        . . .

    8.    The Subcontractor shall be responsible for all layout and engineering of its own work. The Subcontractor shall be responsible for clean-up of its own debris on a daily basis. If, in the opinion of the Contractor, clean-up is not being performed satisfactorily, the Contractor, after having notified the Subcontractor of same, shall have the work performed by others, and all charges incurred will be for the account of the Subcontractor, and shall be deducted from payments due to the Subcontractor.

**B. TERMS AND CONDITIONS:**

. . .

**2. SCOPE OF WORK:** Subcontractor shall provide and pay for all labor, materials, services, tools, equipment, and other things necessary to fully perform the Work, in cooperation with the other trades, in a good and workmanlike manner, and to the satisfaction and acceptance of Contractor and Owner or Owner's representative, which shall be final. . . .

(Doc. No. 112 at 9–10; Doc. No. 99-2 at 1–3.)

In language omitted from Plaintiffs' quotations above, Section A.6. of the Subcontract goes on to state that "Subcontractor shall be responsible for determining the specific manner of performing the Work subject to the requirements of the applicable [Statement of Work]"; and Section B.2. goes on to state that "Subcontractor shall examine the applicable premises and ascertain existing site conditions . . . and the nature and location of the Work thereon," and shall perform "[a]ll Work affected or governed by such site conditions, . . . whether indicated and specified or not[.]" (Doc. No. 99-2 at 2, 3.) From this omitted language, it appears that although Janus was to provide New Century with "general" instructions and directions for installation of the storage units, the specific manner of performing the installation—including among other things the specific way in which temporary angle braces should be installed—was New Century's responsibility, as was the determination of what additional work was necessary due to the nature and location of the installation vis-à-vis other work being done on the job site. Furthermore, pursuant to the cited Section A.8., New Century was responsible "for all layout and engineering of its own work." It was also responsible for daily "clean-up of its own debris," subject to Janus's right to review for satisfactory performance and order additional clean-up at New Century's expense. Provisions of the Subcontract that are not cited by Plaintiffs include, most notably, the provision that New Century shall observe all published job-safety requirements and "shall provide

safe working conditions for [its] employees and other persons at all times," followed by the recognition "that other subcontractors, Contractor, or Owner may be working in the same area as the Work to be performed under this Subcontract[.]" (*Id.* at 4, § B.4.) Following this allocation of responsibility for work safety to New Century, the Subcontract includes an indemnity provision in favor of Janus, whereby New Century must hold Janus harmless from any claim arising from New Century's negligence or "any accident, injury, or damage whatsoever caused to any person[.]" (*Id.*, § B.6.)

Read together, these provisions of the Subcontract do not establish Janus's role and responsibility as supervisor over New Century's safe performance of the work or maintenance of the job site, nor do they (or the provisions of Janus's contract of sale with "Buyer" Storage Five (Doc. No. 99-3 at 1)) reflect that Janus had any responsibility for worksite safety in the first instance. At most, they reflect Janus's reservation of the right to determine whether New Century's work meets Janus's quality standards, as well as the right to determine whether clean-up of the job site is satisfactory and, in the event that New Century is not cleaning the site satisfactorily, to hire that job out at New Century's expense. Accordingly, the Court finds that the Subcontract does not give rise to any more particular duty owed by Janus (as a supervisor of New Century or otherwise) to the other companies' workers on the job site than it otherwise owed under the common law. *Cf. Johnson*, 837 S.W.2d at 67 (finding that "[t]he Contract Documents, viewed as a whole, and especially in the light of the above quoted portions seem abundantly clear that EMPE as project engineer had no authority and no significant role in supervising the construction work," and therefore cannot be liable "for faulty working conditions created by the contractor").

Janus, then, stood in such a relationship with Plaintiff as to be required merely "to conform to a reasonable person standard of care for the protection against unreasonable risks of harm."

*Marla H.*, 361 S.W.3d at 531. In order to determine whether a particular risk of harm is unreasonable, presents a danger to the plaintiff, and thus gives rise to the defendant's duty to protect against it, "courts must first establish that the risk is foreseeable"; "if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established." *Id.* at 532 (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009), and *Satterfield*, 266 S.W.3d at 366)).

Importantly, however, the standard for evaluating foreseeability depends on the element of negligence under consideration. *See id.* ("[T]he role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation.") (quoting *Satterfield*, 266 S.W.3d at 376). At the duty stage, foreseeability is to be evaluated using "a more general approach to the likelihood of harm," whereas at the causation stage "the foreseeability of the specific harm suffered by the plaintiff" must be determined. *Id.* In short, "[a] duty of reasonable care typically will exist—and a risk of harm will be deemed unreasonable—where the foreseeability of the risk and the gravity of the potential harm outweigh the burden on the defendant to prevent the harm from occurring." *Id.* at 533 (citing, *e.g.*, *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 54 (Tenn. 2004)).

On the undisputed facts established by the summary judgment record before the Court, it cannot be said that Janus—which, aside from sending Mr. Rabinette for one site visit during New Century's installation of the storage units, merely hired the labor and supplied the materials for framing and finishing those units—could have reasonably foreseen any likelihood of harm to other companies' employees who were not working on the storage units, within the limited time the angle braces were employed in framed-but-unfinished units. By demonstrating that it lacked both

contractual responsibility for and actual knowledge of the way in which New Century performed the installation work, or of the fact that other contractors' employees may be directly exposed to the materials being installed, Janus has met its initial burden of showing the absence of a factual issue regarding whether it reasonably could have foreseen any danger to workers not employed by New Century. It is undisputed that New Century workers were the only storage-unit installers on the project, and therefore the only workers tasked with handling the materials supplied by Janus.

Plaintiffs have not succeeded in rebutting Janus's showing by establishing a genuine issue of material fact regarding whether Janus knew or should have known that other contractors' employees were working in close proximity to New Century's workers or in the vicinity of the angle braces' sharp edges. As Plaintiffs assert, New Century was to "come in behind [Active Energy] to stage their materials and construct the storage units," after Active Energy cleared the area for such work. (Doc. No. 112 at 3.) The transcript of Mr. Rabinette's deposition submitted by Plaintiffs shows that he did not notice the presence of any workers from other contractors when he visited to inspect New Century's work installing the storage units. (Doc. No. 112-6 at 8.) Indeed, Plaintiffs elsewhere argue that the angle braces were not an "open and obvious" danger because "employees of Active Energy, including Mr. Schrader, were not working on the storage units." (Doc. No. 122 at 4.)[5] Because the material facts of Janus's role with regard to the work of the project and its relationship to both New Century and Plaintiff are not genuinely disputed, and those facts confirm a relationship that would not, if ultimately established before the trier of fact, entail any duty of care owed by Janus to protect against Plaintiff's injury, Janus is entitled to judgment as a matter of law on Plaintiffs' negligence claim, *see Bradshaw*, 854 S.W.2d at 869–70; *Garcia*,

---

[5] *See* Fed. R. Civ. P. 56(c)(3) (providing that although the Court "need consider only" materials cited in the parties' briefing, "it may consider other materials in the record"); *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

266 S.W.3d at 922, as well as on Lavina Schrader's derivative claim for loss of consortium. *See Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 488 (Tenn. 2021) ("A loss of consortium claim is a derivative claim, and recovery is dependent on the spouse's recovery.").

## CONCLUSION

For these reasons, Janus's Motion for Summary Judgment (Doc. No. 98) is **GRANTED** and Janus is **DISMISSED** as a Defendant to this action.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE