IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANDREW SCHRADER, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) NO. 3:20-cv-00500 ) |
| STORAGE FIVE CLARKSVILLE, LLC, et al., | ) JUDGE RICHARDSON ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This action for personal injury presents claims of negligence and loss of consortium under Tennessee law (*see* Doc. No. 43, Amended Complaint), invoking this Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(3). Motions for Summary Judgment were filed separately by each of the four respective Defendants named in the Amended Complaint: New Century Doors and Building Components, Inc., d/b/a New Century Doors, Inc. ("New Century") (Doc. No. 86); Denver Commercial Builders, d/b/a Reconn Construction Services ("Reconn") (Doc. No. 90); Storage Five Clarksville, LLC ("Storage Five") (Doc. No. 93); and Janus International Group, LLC ("Janus") (Doc. No. 98).

This Memorandum Opinion concerns Storage Five's Motion for Summary Judgment and associated filings (Doc. Nos. 93–95, 121), and the responsive filings of Plaintiffs Andrew and Lavina Schrader. (Doc. Nos. 115–16, 124.) As explained below, Storage Five's Motion for Summary Judgment is **DENIED**.

## UNDISPUTED FACTS

The following undisputed, material facts are taken from Plaintiff's response to Storage Five's Local Rule 56.01 statement of the same. (Doc. No. 116.)

Storage Five was at all relevant times the owner of a commercial property in Clarksville, Tennessee, where Plaintiff Andrew Schrader ("Plaintiff")[1] was injured in the course of a construction project to renovate an existing structure into an indoor storage facility. (Doc. No. 116, Plaintiffs' Responses to Storage Five's Statement of Undisputed Facts, at 2 ¶2.) Storage Five executed a contract with Reconn for the completion of the project to remodel the property into an indoor storage facility. A fully executed American Institute of Architects (AIA) contract containing redline notations is the incorporated final version of Storage Five and Reconn's agreement. (*Id.* ¶3; *see* Doc. No. 94-1 ("the Contract").) Under the Contract, Reconn assumed the role of general contractor to oversee and complete the project work. (Doc. No. 116 at 2 ¶4.) As recognized in an addition to the Contract with Reconn, Storage Five contracted directly with Janus to provide specialized materials and services for erecting the metal storage units within the project. (*Id.* ¶5; *see* Doc. No. 94-1 at 3, 18.)

Janus subcontracted New Century to install the metal storage unit materials Janus supplied, and Reconn subcontracted Plaintiff's employer, Active Energy Services, LLC ("Active Energy"), to provide a range of construction services that essentially covered all labor on the project not designated by contract for Janus and Janus's subcontractor New Century. (Doc. No. 116 at 3 ¶¶6–7.)

---

[1] Plaintiff Lavina Schrader asserts a claim for loss of consortium resulting from the injury to her husband, Andrew Schrader. (*See* Doc. No. 43 at 20.) The Court uses the singular "Plaintiff" in this Memorandum Opinion to refer to Andrew Schrader, although for clarity his name is used instead of "Plaintiff" in places in proximity to the term "Plaintiffs."

Reconn's control of the construction work and the site encompassed overall site supervision and specifically the safety of subcontractors and workers during the storage unit installation. (*Id.* at 4 ¶9.) At all relevant times, Reconn employed Larry Patrick as Reconn's superintendent for the Storage Five project and construction site. (*Id.* ¶10.) Mr. Patrick understood his responsibilities as Reconn's superintendent to include "oversight of safety on the site" for this job. (*Id.* at 5 ¶12 (quoting Doc. No. 95-5, Larry Patrick Depo., at 8).) Mr. Patrick knew that it was his responsibility to execute the Reconn Safety Manual, which directed him to (1) "[m]onitor the status of workplace safety and health, by personally conducting a daily workplace safety inspection and by directing corrective action," and (2) coordinate an effective safety program with other entities and contractors on the job site besides Reconn. (*Id.* ¶¶13–14 (quoting Doc. No. 95-5 at 10–12).) At all times on the Storage Five project, Larry Patrick knew that Reconn expected him to exercise control and authority to stop any work or practices that were unsafe on the job site, including work or actions by contractors and entities other than Reconn. (*Id.* ¶15.) He exercised actual control of the premises by conducting periodic safety meetings that included all entities and workers at the project, by conducting daily safety inspections of the work site and actually addressing safety concerns, and by stopping work and correcting subcontractors he considered to be acting unsafely. (*Id.* at 6–7 ¶¶17–19.)

As general contractor, Reconn had responsibility to assess the Storage Five job site "for any potential safety hazards" at all times, both before and during the construction; to make sure the site was free of any hazards; and to ensure "that every worker on the site was working safely." (*Id.* at 7 ¶¶20–21 (quoting Doc. No. 95-4, Mark Sanford Depo., at 9–12).) Also, as general contractor, Reconn recognized that rolls of wire mesh on the ground at a job site constituted a

tripping hazard; it expected its superintendent to exercise control over removing or throwing away wire mesh left on the ground of the Storage Five job site. (*Id.* at 8 ¶¶23–24.)

On June 20, 2019, Plaintiff was at the Storage Five project working as an employee laborer/supervisor for Reconn's subcontractor, Active Energy. (*Id.* at 9 ¶26.) When Plaintiff walked around a set of saw horses to assist his coworker, his feet got tangled in an arched piece of woven wire laying discarded on the floor. His tangled feet caused him to trip over the metal track of a semi-constructed storage unit wall. (*Id.* ¶27.) Plaintiff sustained significant injuries in the resulting fall.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v.*

*Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[2] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

---

[2] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

ANALYSIS

Where, as here, the basis for jurisdiction is diversity of citizenship of the parties, the Court applies the substantive law of the forum state—in this case, Tennessee. *Corley v. Wal-Mart Stores East, LP*, 637 F. App'x 210, 211 (6th Cir. 2016). Under Tennessee law, to establish a claim for negligence, Plaintiffs must prove: (1) a duty of care owed by Storage Five to Andrew Schrader; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *See York v. Hilton Worldwide, Inc.*, No. 2:11-CV-3033-JPM-CGC, 2013 WL 2948443, at *3 (W.D. Tenn. June 14, 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). In addition to the standard elements of a negligence claim, a plaintiff seeking to hold a premises owner or operator liable for injury resulting from a dangerous condition on the premises must prove that: "1) the condition was caused or created by the owner, operator, or his agent, or 2) if

the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Seymour v. LQ Mgmt., LLC*, No. 3:16-CV-03039, 2018 WL 6341703, at *3 (M.D. Tenn. Dec. 5, 2018) (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). Storage Five's summary judgment burden, then, is initially to identify portions of the record that demonstrate the absence of a genuine dispute over material facts concerning one or more of these elements, and then to demonstrate that in the absence of such factual issue(s), it is entitled to judgment as a matter of law.

In negligence cases, "the initial focus is on whether a duty exists[.]" *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012). "The existence of a duty is a question of law for the court[.]" *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). More precisely, the Court must determine whether the facts in evidence show that the parties stand in such a relationship that, if the relationship is ultimately established before the trier of fact, the defendant will owe a duty of care to the plaintiff as a matter of law. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (quoting *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 859 (Tenn. 1985)); *see Garcia v. Norfolk S. Ry. Co.*, 266 S.W.3d 917, 922 (Tenn. Ct. App. 2008) (quoting *Kelley v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 598 (Tenn. 2004)). A property owner's duty with regard to subcontractor-invitees like Plaintiff is "to exercise reasonable care to ensure that [the subcontractor's] work area [is] reasonably safe." *Miranda v. CSC Sugar, LLC*, No. W2017-01986-COA-R3-CV, 2018 WL 3302035, at *5 (Tenn. Ct. App. July 5, 2018).

Storage Five argues that Plaintiffs' case fails at this threshold element of duty. It relies heavily upon two decisions adjudicating negligence claims in the property owner/contractor context: first, the decision of the Tennessee Court of Appeals in *Johnson v. EMPE, Inc.*, 837

S.W.2d 62 (Tenn. Ct. App. 1992), and second, the decision of the Tennessee Supreme Court in *Blair v. Campbell*, 924 S.W.2d 75 (Tenn. 1996). The Court considers the arguments from these cases in turn.

First, in *Johnson*, the Tennessee Court of Appeals announced the rule that "[t]he law places the duty upon the person in control of premises to exercise reasonable and ordinary care, under the circumstances, not to cause injury to one lawfully upon the premises." 837 S.W.2d at 65. The court stated this rule after citing a Tennessee Pattern Jury Instruction explaining that, as between a premises owner and a contractor hired by the owner to perform work on the premises, the contractor owes the duty of care to its injured employee if it had "complete control of the premises where the accident occurred and the owner had retained no control of that part of the premises except to the extent of determining if the work was being performed according to the contract"; otherwise, the duty to avoid exposing the contractor's employee to an unreasonable risk of harm would remain with the premises owner. *Id.* Storage Five argues that Reconn, particularly through its employee Larry Patrick, had complete control of the premises, and that Storage Five's principal Chris Catania visited the job site only once per month to ensure that the work was being performed according to the Contract. In response, Plaintiffs argue that the Contract between Storage Five and Reconn did not allocate complete and undisputed control over the project to Reconn, as would be required to insulate Storage Five from all liability for injuries occurring during the work of the project. They argue that, between the contractual language and the role of Catania in overseeing the work of the project, a genuine issue of material fact exists as to whether Storage Five retained sufficient control over the project to owe a duty of care to Andrew Schrader.

In Tennessee, "courts addressing situations where an employee of a subcontractor is injured at a workplace have looked to, among other things, the contracts governing the relationships

between the landowners, prime contractors, and subcontractors to examine the scope of parties' respective duties." *Thompson v. Southland Constructors*, No. M2019-02060-COA-R3-CV, 2020 WL 6538821, at *4 (Tenn. Ct. App. Sept. 2, 2020) (citing, *e.g.*, *Johnson*, 837 S.W.2d at 65–68). Following this line of tort cases, courts adjudicating an issue between a plaintiff and a defendant who do not have a contract with one another are not called upon to *construe* any contracts between other parties to the project, but merely to consult the terms of such contracts to determine whether they support a common-law tort duty to the plaintiff —*i.e.*, a "socially-imposed obligation to use care"—in addition to whatever duties they specifically impose upon the contracting parties. *See generally Thomas & Assocs., Inc. v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003) (discussing differences between tort duties and contract duties in a construction case).

In this case, Larry Patrick's deposition testimony reveals his understanding that he, on behalf of Reconn, was responsible for overseeing safety on the job site, with daily inspections and the authority to stop work by any contractor (regardless of whether they were contracted by Reconn or directly by Storage Five) if unsafe conditions were present. But Storage Five did not, as a matter of contract, cede "complete control" to Reconn/Patrick over safety on the job site while itself "retain[ing] no control." *Johnson*, 837 S.W.2d at 65. In *Johnson*, unlike the case at bar, there was no dispute that, as between the landowner (the City of Bristol, Tennessee) and the general contractor, the contractor completely controlled the job site. *See id.* ("[U]nder the circumstances of this case, where the contractor was undisputedly in control of the premises, the duty was upon the contractor and not the City of Bristol."). *Id.* But in this case, where it is disputed whether any party had *complete* control (and, if so, which party), both parties to the instant summary judgment motion point to the Contract and to what it does and (perhaps more notably) does not say. It is

undisputed that the Contract does not explicitly allocate control over worker safety on the job site. Storage Five points out that the Contract requires Reconn to "fully execute the Work," as "Work" is defined in the Contract, "except as specifically indicated . . . to be the responsibility of others" elsewhere in the Contract. (Doc. No. 94-1 at 2.) Because the Contract does not elsewhere specify that supervision of worker safety is the responsibility of any party besides Reconn, Storage Five argues that such responsibility falls to Reconn as executor of "the Work." (Doc. No. 94 at 3.) On the other hand, Plaintiffs argue from the Contract's silence regarding supervision of worker safety, and from Storage Five's contractual authority to suspend work on the job site at its discretion (*see* Doc. No. 94-1 at 13), that Storage Five did not delegate to Reconn *all* of its duties with regard to worker safety. (*See* Doc. No. 115 at 9.)

Examination of the Contract reveals a banner on its front page stating that "AIA Document A201$^{TM}$–2017, General Conditions of the Contract for Construction, is adopted in this document by reference." (Doc. No. 94-1 at 1.) Discrete provisions of Document A201$^{TM}$–2017 are then referred to many times throughout the Contract. (*Id.* at 5, 7, 10–15.) However, in a modification at the end of the Contract, Document A201$^{TM}$–2017 is specifically deleted from the list of documents comprising "the Contract Documents." (*Id.* at 14, 20.) This deletion would appear to have significant ramifications in this case. In *Thompson*, the Tennessee Court of Appeals reviewed the language of Document A201$^{TM}$–2017 and noted that "Section 10.2 of the General Conditions entitled SAFETY OF PERSONS AND PROPERTY, provides" that the contractor, not the owner, is solely responsible to "take reasonable precautions for safety" and to "provide reasonable protection to prevent damage, injury or loss to," *e.g.*, "employees on the Work." 2020 WL 6538821, at *6; *see also Martin v. Garner & L.*, No. 03A01-9102-CV00080, 1991 WL 177915, at *1 (Tenn. Ct. App. Sept. 13, 1991) ("The contract between the owner and the contractor

(decedents' employer) utilizes the standard American Institute of Architects form, which places sole responsibility for supervision and safety on the contractor."). In the absence of such an explicit delegation to Reconn of all duties regarding worker safety, Storage Five is forced to argue that it implicitly delegated those duties based on the broad contractual provision of Reconn's responsibility for "the Work," and that "[t]o place a duty on Storage Five in this case would entirely negate the legal concept of an independent contractor." (Doc. No. 94 at 12.)

However, the Court cannot ignore that Storage Five and Reconn chose not to explicitly contract for Reconn's sole responsibility for safety on the job, even though it would have been easy enough to do so. *See Oman Const. Co. v. Tennessee Cent. Ry. Co.*, 370 S.W.2d 563, 569 (Tenn. 1963) ("Had it been the intention of the parties that [the architect] be contractually liable to the plaintiff or others, it would have been a simple matter to have included in [the] contract the same clear and unambiguous provisions for assumption of liability that were contained in . . . other contracts."). Storage Five's arguments do not persuade the Court to find, as a matter of law on this summary judgment record, that Reconn had "complete control" and Storage Five retained "no control" over the provision of a reasonably safe workspace for Plaintiff, such that Plaintiff cannot possibly establish the "duty" element of his negligence claim against Storage Five. *See Whitsett v. McCort*, No. 46, 1990 WL 123943, at *7 (Tenn. Ct. App. Aug. 28, 1990) (affirming trial court's instruction to the jury on the contested "issue of control of the premises," as to which "there were disputed issues of material fact from which a jury could find that the [owners] either had or had not turned over the entire control of the premises to [the general contractor]"); *Kesling v. Golden Sec. Life Ins. Co.*, No. 70, 1990 WL 82502, at *8 (Tenn. Ct. App. June 20, 1990) ("A factual question regarding control was presented and the trial court placed the onus of answering that question upon the jurors."); *see also Hoskins v. A.O. Smith Corp.*, 22 F. App'x 500, 504 (6th Cir.

2001) (in dissent) (citing *Johnson*, 837 S.W.2d at 65) ("Where control over the premises is not 'indisputable,' the question of control, and therefore duty, becomes a factual matter for the jury's consideration.").

In particular, Storage Five's retention of control impacting worker safety on the premises may be disputed based on the contractual reservation to Storage Five of a right not only to suspend the work, but to control the process by which Reconn obtained bids from and employed subcontractors. (*See* Doc. No. 94-1 at 8–9.) Furthermore, although Reconn undertook in the Contract to furnish "efficient business administration and supervision" and "an adequate supply of workers and materials" (*id.* at 2), it was agreed that Storage Five would contract directly with Janus and would bear any burden associated with "delays in [Janus's] work," as well as any "delays in trade work stemming from hiring Active Energy Solutions," Plaintiff's employer, "to perform the majority of all trade work due to cost savings." (*Id.* at 3.) In a similar situation, the Tennessee Supreme Court determined that a premises owner "did reserve some control over the premises," and was therefore properly found liable for injury to a subcontractor's employee, where the owner retained in its contract with the general or "principal" contractor the right to do work anywhere on the premises (including "in the same location or in the same structure" as workers hired by the contractor) either itself or through "other independent contractors working on the premises simultaneously with [the general contractor] who had no connection with [the general contractor] but were direct independent contractors with [the owner]." *Int'l Harvester Co. v. Sartain*, 222 S.W.2d 854, 858, 864–65 (Tenn. 1948). As that court noted, "[i]t is the right to control rather than the fact of controlling the method of doing the work" which potentially exposes the owner to liability based on duty, "although actual control may be competent evidence tending to show the right to control." *Id.* at 865. *See also Kesling*, 1990 WL 82502, at *6–8 (applying *Sartain* and

rejecting owner's argument for directed verdict; finding that jury question as to owner's duty arose from contract language reserving its right "to award separate contracts in connection with other portions of the Project or other work on the site" alongside general contractor, subject to contractor's ability to claim for any "delay or additional cost [that] is involved because of such action by [owner]").

In sum, the Court finds that Storage Five has failed to carry its burden of proving the absence of a genuine factual issue related to the extent of its control (versus that of Reconn) over the job site. It is therefore not entitled, under *Johnson*, to judgment as a matter of law on the issue of duty.

With regard to the second case relied upon by Storage Five, the Tennessee Supreme Court in *Blair* recognized "[a]n important exception" to the general rule that an owner or controller of property "owes an independent contractor hired to perform work on the premises a duty to provide a reasonably safe place in which to work." 924 S.W.2d at 76. This exception applies "where the risks arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair," in which case the contract for the repair work "is sufficient in itself to impart notice of a defect" the risk of which is assumed by the contractor. *Id.* at 76–77. In the case at bar, Storage Five argues that Plaintiff was on notice of the risks he encountered because they arose from the work he was hired to do, negating any duty that Storage Five might otherwise owe. Plaintiffs respond that Andrew Schrader was not injured while making a repair his employer contracted to make, and that the exception recognized in *Blair* therefore does not apply.

The Court agrees with Plaintiffs that *Blair*'s exception to a property owner's duty to provide a reasonably safe workspace is not applicable here. Construction workers do not, as

Storage Five posits, assume all potential "risks of the construction site," such that "the property owner does not have a duty to provide safe conditions for contractors or their employees to complete the work they were hired to do." (Doc. No. 94 at 9, 11.) Such an exception would swallow the general rule. While construction workers, in performing the work they were hired to do, have "a duty to exercise reasonable care to avoid injury to themselves and each other, this in no way means that defendant[] [premises owners] d[o] not owe a duty to [a construction-worker] Plaintiff." *Reynolds v. Rich*, 511 S.W.3d 526, 536 (Tenn. Ct. App. 2016). As confirmed by the Tennessee Supreme Court, the limited exception carved out in *Blair* operates to insulate an owner from liability to a worker who was contracted to perform work that is "inherently dangerous" or involves a "known danger," and whose contract with the owner provides "sufficient notice that he might face [such] danger in connection with" the specific repair he was hired to make. *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 299–300 (Tenn. 2007). While Storage Five contends that the risk of being cut by metal was inherent in the work or otherwise known by Plaintiff because "[t]he central component of the entire project was the fabrication and erection of metal, into metal storage units" (Doc. No. 94 at 12), Plaintiff more persuasively argues that his employer "Active Energy was hired by Reconn to perform work for every aspect of the project *except* for the actual construction of the storage units," which were to be installed by another company under a separate contract with Storage Five. (Doc. No. 115 at 12 (emphasis added); *see* Doc. No. 115-2, Richard Everett Depo., at 4–5 (describing scope of Active Energy's engagement, to perform "demolition and trades necessary to allow for the installation of storage [units]"); Doc. No. 115-1, Andrew Schrader Depo., at 4–7 (same); Doc. No. 86-3, Andrew Schrader Depo., at 45 (same).[3]) At the

---

[3] On this page of Plaintiff's deposition transcript, he elaborates on Active Energy's role in the project, as follows: "Do demolition. To completely gut the building out. We had to rerun some electrical. We had to eliminate some electrical. Put a restroom in it with a break room. I had to replace some AC units, some

least, there is a genuine issue of material fact as to whether the engagement of Active Energy's services provided notice that its employees would be exposed to the risk of being cut by metal used in the construction of the storage units. Accordingly, Storage Five is not entitled, under *Blair*, to judgment as a matter of law on the issue of duty.

CONCLUSION

For these reasons, Storage Five's Motion for Summary Judgment (Doc. No. 93) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

HVAC units. Had to do some sprinkler work. We had to sub that out. We had some roofing to do. We subbed that out, and we had the front window and doors to replace, and that was subbed out also." (Doc. No. 86-3 at 45.) Although this page was not included in the briefing on Storage Five's summary judgment motion, Federal Rule of Civil Procedure 56(c)(3) provides that the Court "need consider only" materials cited in the parties' briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").