IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANDREW SCHRADER, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) NO. 3:20-cv-00500 |
| STORAGE FIVE CLARKSVILLE, LLC, et al., | ) ) JUDGE RICHARDSON ) ) |
| Defendants. | ) ) |

# MEMORANDUM OPINION AND ORDER

This action for personal injury presents claims of negligence and loss of consortium under Tennessee law (*see* Doc. No. 43, Amended Complaint), invoking this Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(3). Motions for Summary Judgment were filed separately by each of the four respective Defendants named in the Amended Complaint: New Century Doors and Building Components, Inc., d/b/a New Century Doors, Inc. ("New Century") (Doc. No. 86); Denver Commercial Builders, d/b/a Reconn Construction Services ("Reconn") (Doc. No. 90); Storage Five Clarksville, LLC ("Storage Five") (Doc. No. 93); and Janus International Group, LLC ("Janus") (Doc. No. 98).[1]

This Memorandum Opinion concerns Reconn's Motion for Summary Judgment and associated filings (Doc. Nos. 90–92, 120, 120-1, 120-2), and the responsive filings of Plaintiffs Andrew and Lavina Schrader. (Doc. Nos. 106–07, 122.) As explained below, Reconn's Motion for Summary Judgment is **DENIED**.

---

[1] As noted below, the Court already has decided each respective motion for summary judgment filed by a Defendant other than Reconn. (Doc. Nos. 130, 132, 133).

# UNDISPUTED FACTS

In addition to the recitation below, the Court's rulings on the other three Defendants' respective summary judgment motions lay out the factual background for this lawsuit. (*See*, *e.g.*, Doc. No. 130 at 2–9.) The following facts material to the instant motion, asserted by Reconn and admitted by Plaintiffs,[2] are reproduced verbatim from Reconn's statement of undisputed facts (Doc. No. 92) and Plaintiffs' response thereto (Doc. No. 107), but with paragraph breaks and enumeration, and citations, omitted:

> The project at which Andrew Schrader ("Plaintiff") alleges he was injured was converting an existing building into a storage facility ("Project"). Storage Five Clarksville, LLC ("Owner") is the owner of the Project. Owner contracted with Denver Commercial Builders, Inc. d/b/a Reconn Construction Services ("Reconn") to be the general contractor on the Project. Larry Patrick and Matt Sanford were the only . . . employees of Reconn that were ever present at the Project. Larry Patrick was present day-to-day at the Project site. Larry Patrick was a superintendent on the Project. Matt Sanford is Reconn's principal.
>
> Reconn contracted with Active Energy Services ("Active Energy") to renovate the building in which the storage facility units were to be built. Active Energy provided all labor and materials to complete its scope of work on the Project. Richard Everett is a manager at, and part owner of, Active Energy. … Owner contracted with Janus International to supply the labor and materials for storage units. Janus International Group, LLC ("Janus") manufactures self-storage facility materials. Janus subcontracted New Century Doors to perform all installation work for the storage units. All materials for New Century Doors, Inc.'s ("New Century Doors") scope of work was manufactured or supplied by Janus.
>
> New Century Doors and Active Energy were the only entities on the Project that had tradesmen and laborers doing construction and installation work at the Project site. Active Energy was responsible for supervising its workers at the Project. . . . Active Energy held daily meetings every morning that every Active Energy worker was required to attend were [sic] they discussed potential hazards and safety specific to the day's tasks. Active Energy's protocol is to pick up debris at the end of the workday. … New Century Doors was responsible for supervising its workers at the Project. New Century Doors was responsible for cleaning up any debris that its workers created at the Project. . . .

---

[2] Plaintiff Lavina Schrader asserts a claim for loss of consortium resulting from the injury to her husband, Andrew Schrader. (*See* Doc. No. 43 at 20.) The Court uses the singular "Plaintiff" in this Memorandum Opinion to refer to Andrew Schrader, although for clarity his name is used instead of "Plaintiff" in places in proximity to the term "Plaintiffs."

Plaintiff began working for Active Energy Services in February 2016. Plaintiff was hired as a superintendent at Active Energy and remained a superintendent at the time of the Project. Plaintiff performed superintendent duties on the Project. Plaintiff's role as superintendent at Active Energy Services is a supervisory role, and in that role Plaintiff was responsible for supervising the work of others and all work except for electrical. Plaintiff's job duties as superintendent include[] maintenance of the job site, which includes making sure items are off of the floor.

On the day of Plaintiff's injury, Rich Everett directed Plaintiff to cover a wall with plywood sheeting to create a restroom and break room area. In the area where Plaintiff was working, there were partially-completed storage units that had front walls supported by metal bracing, no side walls, and no back walls. Plaintiff was walking to assist a co-worker with putting up the plywood sheets. There was a walkway to Plaintiff's co-worker that was clear of debris. There was also a cut-through path to Plaintiff's co-worker by which Plaintiff could cut through the partially-completed storage unit. There was a piece of woven wire on the floor of Plaintiff's path to and through the partially-completed storage unit. The piece of woven wire was approximately three to four feet long and 14 to 18 inches wide. … Plaintiff tripped on the woven wire and fell. When Plaintiff fell, Plaintiff's hand hit the metal bracing supporting the front wall in a partially-completed storage unit, resulting in a laceration on his hand. Plaintiff was not wearing gloves at the time that he fell. . . .

Plaintiff was instructed at Project safety meetings to remove any obstructions on the ground to prevent injury to anybody walking. Plaintiff knew that obstructions on the floor of a project should be thrown away to prevent injury for anyone walking. Plaintiff instructs those he supervises to keep working walk space clear of any kind of debris. There was no debris or other objects on the ground in the area where Plaintiff fell other than the woven wire that Plaintiff alleges he fell on. The only other injury at the Project aside from Plaintiff's purported injury was a worker stepping off of a ladder wrong and twisting his ankle.

Reconn did not provide any building materials for the Project. Reconn did not provide any labor or tradesmen for the Project. … Larry Patrick was the only Reconn employee present at the Project site the day of Plaintiff's purported injury. Larry Patrick first observed the woven wire on which Plaintiff alleges that he fell after Plaintiff fell. New Century Doors installed and supervised the installation of the woven wire material on which Plaintiff tripped. Larry Patrick and Reconn did not place or leave the woven wire upon which Plaintiff alleges that he fell on the ground at the Project. Plaintiff did not notify Reconn of the woven wire being on the floor prior to his fall. Plaintiff does not know of anyone that informed Reconn of the woven wire being on the floor prior to his fall.

(Doc. No. 107 at 1-16.)

Photographs of the scene of Plaintiff's accident—including the below images depicting the plywood wall, the storage unit frames and their angled support braces, and the piece of woven wire—have been filed on the record in this case (Doc. No. 94-2), albeit not in support of the instant motion or response.[3] Accordingly, these photographs are included here as a visual aide to give context to the Court's discussion herein; they are not construed as depicting the scene in the immediate aftermath of Plaintiff's injury or the accurate placement of the wire mesh in relation to the frames or the wall at the time of the accident.



---

[3] Federal Rule of Civil Procedure 56(c)(3) provides that although the Court "need consider only" materials cited in the parties' briefing, "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").



In addition to the foregoing facts, there is no genuine dispute that Plaintiff had more than two decades of experience working in the construction industry at the time of his injury, or that Reconn generally bore responsibility for the safety of workers subcontracted on the Project, notwithstanding the existence of whatever responsibility was borne by the companies who directly employed the workers and by the workers themselves. (*See* Doc. No. 120-2, Reconn's Reply to Plaintiffs' Response to Statement of Undisputed Material Facts & Plaintiffs' Statement of Additional Facts, at 5–9, 17–18.) As far as the staging of the work on the Project, it is undisputed that, "[w]hen the project began, Active Energy would perform demolition work throughout the building, and New Century would come in behind them to stage their materials and construct the storage units." (*Id.* at 24–25.) The construction of the storage units began on May 28, 2019 (*id.* at 28), roughly three weeks prior to when Plaintiff sustained an injury while working on the wall adjacent to a row of four storage units that had not been completed. (*Id.* at 30–31.)

# SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-

moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[4] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary

---

[4] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

Where, as here, the basis for jurisdiction is diversity of citizenship of the parties, the Court applies the substantive law of the forum state—in this case, Tennessee. *Corley v. Wal-Mart Stores East, LP*, 637 F. App'x 210, 211 (6th Cir. 2016). Under Tennessee law, to establish a claim for negligence,[5] Plaintiffs must prove: (1) a duty of care owed by Reconn to Andrew Schrader; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *See York v. Hilton Worldwide, Inc.*, No. 2:11-CV-3033-JPM-CGC, 2013 WL 2948443, at *3 (W.D. Tenn. June 14, 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). In addition to the standard elements of a negligence claim, a plaintiff seeking to hold a premises owner or operator liable for injury resulting from a dangerous condition on the premises must prove that: "1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Seymour v. LQ Mgmt., LLC*, No. 3:16-CV-03039, 2018 WL 6341703, at *3 (M.D. Tenn. Dec. 5, 2018) (quoting *Blair v.*

---

[5] As they do against the other Defendants, Plaintiffs exclusively assert Reconn's liability in tort under a common-law negligence theory, despite the fact that Reconn is the one Defendant with which Plaintiff's employer had a contract. While other contracts between the parties to this commercial construction project have been filed on the record of this case and their provisions considered in ruling on other summary judgment motions, only the *fact* of the contract between Reconn and Active Energy has been recognized on this record. (*See* Doc. No. 107 at 3, ¶ 8; *see also* Doc. No. 95-4 at 4, 7–8.) The contract itself has not been filed on the record of this case, nor have any of its provisions been cited in support of the parties' summary judgment arguments.

*West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)).[6] Reconn's summary judgment burden, then, is initially to identify portions of the record that demonstrate the absence of a genuine dispute over material facts concerning one or more of these elements, and then to demonstrate that in the absence of such factual issue(s), it is entitled to judgment as a matter of law.

Reconn seeks judgment as a matter of law on three grounds: first, that it "did not create, or have actual or constructive notice of, the condition that Plaintiff alleges caused his injury"; second, that it "did not have a duty to warn against or prevent the harm suffered by Plaintiff" because that harm was not reasonably foreseeable; and third, that Plaintiffs cannot recover under Tennessee's system of modified comparative fault because Andrew Schrader was at least 50% at fault for his injury. (Doc. No. 91 at 6, 9, 12.)

**Duty and Notice**

In negligence cases, "the initial focus is on whether a duty exists[.]" *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012). "The existence of a duty is a question of law for the court[.]" *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). More precisely, the Court must determine whether the facts in evidence show that the parties stand in such a relationship that, if the relationship is ultimately established before the trier of fact, the defendant will owe a duty of care to the plaintiff as a matter of law. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (quoting *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 859 (Tenn. 1985)); *see Garcia v. Norfolk S. Ry. Co.*, 266 S.W.3d 917, 922 (Tenn. Ct. App. 2008) (quoting *Kelley v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 598 (Tenn. 2004)). A property owner or operator's duty with regard to subcontractor-invitees like Plaintiff is "to exercise reasonable care

---

[6] The motion before the Court assumes that Reconn, as the general contractor on the Project, was an operator of the premises through its employee Larry Patrick, the "day-to-day" superintendent of the job site. (Doc. No. 107 at 2.)

to ensure that [the subcontractor's] work area [is] reasonably safe." *Miranda v. CSC Sugar, LLC*, No. W2017-01986-COA-R3-CV, 2018 WL 3302035, at *5 (Tenn. Ct. App. July 5, 2018). That duty encompasses a responsibility that property owners have toward all non-trespassers on their property, "to remove or warn against latent or hidden dangerous conditions on the premises of which [the owner] was aware or should have been aware." *Lunsford v. K-VA-T Food Stores, Inc.*, No. E2019-01272-COA-R3-CV, 2020 WL 1527002, at *3 (Tenn. Ct. App. Mar. 31, 2020) (quoting *Rice v. Sabir*, 979 S.W.2d 305, 309 (Tenn. 1998)).

Reconn argues that the dangerous condition Plaintiff encountered on the job site, the remnant of woven wire on the floor, was open and obvious and therefore could not have been reasonably foreseen as a cause of harm requiring Reconn to prevent, or warn of, its presence there. (*See* Doc. No. 91 at 9–10.) But, as Plaintiffs argue, this focus on whether Reconn had a duty to warn of or remedy a dangerous condition that is "open and obvious," versus "hidden or latent," is misplaced. "Tennessee courts no longer ask whether a condition is 'open and obvious' *as a means of determining a defendant's duty*. Instead, the 'open and obvious' doctrine is now applied under comparative fault principles" by the factfinder, after the court "first determine[s] whether a duty of care is owed due to the presence of a dangerous condition." *Id.* at *4 n.4 (emphasis added) (citing *Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000)). Moreover, Plaintiffs correctly point out that it is the combination of the woven wire in the floor and the exposed, upward-facing sharp edges of the angle bracing that constitute the claimed dangerous condition. (*See* Doc. No. 43 at 10–12 (repeatedly alleging Andrew Schrader's exposure "to tripping and sharp edge hazards").) In order to determine whether the risk from this condition was unreasonable, presented a danger to Plaintiff, and thus gave rise to Reconn's duty to protect against it, the Court "must first establish

that the risk is foreseeable"; "if an injury could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 532 (Tenn. Ct. App. 2011) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009), and *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008)).

The standard for evaluating foreseeability depends on the element of negligence under consideration. *See Marla H.*, 361 S.W.3d at 532 ("[T]he role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation." (quoting *Satterfield*, 266 S.W.3d at 376)). At the duty stage, foreseeability is to be evaluated using "a more general approach to the likelihood of harm," whereas at the causation stage "the foreseeability of the specific harm suffered by the plaintiff" must be determined. *Id.* In short, "[a] duty of reasonable care typically will exist—and a risk of harm will be deemed unreasonable—where the foreseeability of the risk and the gravity of the potential harm outweigh the burden on the defendant to prevent the harm from occurring." *Id.* at 533 (citing, *e.g.*, *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 54 (Tenn. 2004)).

Here, the Court finds (as it also found in adjudicating New Century's summary judgment motion) that it was reasonably foreseeable that diagonal braces installed with their sharp edges exposed and facing upward—with or without the presence of a tripping hazard in the area—could potentially be the source of grave harm to an individual performing work in the immediate area of the braces,[7] and that this risk of harm outweighed any burden on Reconn to mitigate the injury risk

---

[7] As the Tennessee Supreme Court has noted, while accidents "almost invariably are surprises, in the sense that the precise manner of their occurrence cannot be foreseen," "the particular harm need not have been foreseeable if another 'harm of a like general character was reasonably foreseeable.'" *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229 (Tenn. 1998) (quoting *Spivey v. St. Thomas Hospital*, 211 S.W.2d 450, 455 (Tenn. Ct. App. 1947)).

from the temporary braces' sharp edges by directing that they be installed differently or covered in some way, or by otherwise warning of or controlling for their sharpness. Accordingly, the Court finds that the first element of Plaintiff's negligence claim—a duty of care owed to him by Reconn–is established for purposes of summary judgment. Reconn's argument to the contrary is without merit.

On the issue of Reconn's notice (which would appear to either dovetail with or fold into its duty to protect Plaintiff from unreasonably dangerous conditions, *see Seymour*, 2018 WL 6341703, at *3 n.2), the Court agrees with Plaintiffs that, for purposes of summary judgment, Reconn (via Larry Patrick) had actual or constructive notice, prior to the accident, of the existence of the dangerous condition created by the sharp, exposed edge of the angle bracing. *See Blair*, 130 S.W.3d at 764 (requiring such notice to sustain a negligence claim against a premises operator). Reconn does not argue otherwise in its summary judgment motion or reply brief, where it instead focuses on the remnant of woven wire on the floor as the only condition which exposed Plaintiff to danger. Plaintiffs have made a showing sufficient to avoid summary judgment on the element of notice by citing Larry Patrick's deposition testimony concerning his knowledge of the exposed, sharp edges of the angle bracing. (*See* Doc. No. 106 at 10.) Mr. Patrick testified as follows:

> Q. Prior to the accident did you understand that the edges of those angle braces were sharp and could cut somebody?
>
> A. All the metal was sharp.
>
> . . .
>
> Q. Well, my question was, when you examined the piece of angle bracing that Mr. Schrader was injured on, did you notice if any of the sharp edges were facing upward?
>
> A. Yes.
>
> Q. And I think you said that's how they were installing them, correct?

A. Correct.

Q. And would that be how they were installing it on all of the units that you saw?

A. Yes.

(Doc. No. 106-4 at 25–27.) Accordingly, Reconn is not entitled to summary judgment based on its asserted lack of prior notice of any dangerous condition in Plaintiff's workspace.

## Comparative Fault

Finally, Reconn argues that even if Plaintiffs could establish all the elements of their negligence claim, they would be unable to recover as a matter of law due to the extent of Andrew Schrader's fault for his workplace injury. Tennessee has adopted a system of "modified" comparative fault. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). Under this system, "so long as a plaintiff's negligence remains less than the defendant's negligence"—that is, so long as the plaintiff is 49 percent negligent or less—the plaintiff may recover, with that recovery "reduced in proportion to the percentage of the total negligence attributable to the plaintiff." *Id.* (adopting the "49 percent rule"). In the vast majority of cases, "the comparison and allocation of fault is a question of fact to be decided by the finder of fact, that is the jury or the trial court sitting without a jury." *Hatfield*, 2018 WL 11463581, at *5 (quoting *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *6 (Tenn. Ct. App. Jan. 28, 2002)).

As before, Reconn again argues Plaintiff's responsibility for the accident only by reference to the piece of wire on the floor of the workspace. It argues that, among other reasons for assigning fault to Plaintiff, he "had the capacity to recognize and appreciate the risk of encountering the woven wire" and chose to take a path to his co-worker that cut through the unfinished storage units, rather than taking the less direct but unobstructed path that would likely have kept him from

falling, and therefore "reasonable minds could not differ" as to whether he is 50% or more at fault for his fall and resulting injury. (Doc. No. 91 at13–14.) Plaintiffs respond by arguing that, even if Mr. Schrader were found to have encountered a known risk in the remnant of wire that he tripped over, "there are additional acts of negligence other than the presence of the wire mesh that were the cause in fact of the subject incident, and are to be considered by a jury in evaluating liability." (Doc. No. 106 at 19 (citing *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423 (Tenn. Ct. App. 1997)).)

The Court again agrees with Plaintiffs. The facts on this summary judgment record, which are to be construed in Plaintiffs' favor along with any inferences that might be drawn from them, require adherence to, rather than departure from, the general rule that "comparative fault is a question of fact within the jury's province, which should not lightly be invaded by the trial court." *Wall v. Wal-mart Stores E., L.P.*, 446 F. Supp. 3d 254, 257 (M.D. Tenn. 2020) (quoting *LaRue v. 1817 Lake Inc.*, 966 S.W.2d 423, 427 (Tenn. Ct. App. 1997)). Plaintiff's decision to navigate through the storage unit frames near the sharp angle braces plainly put him at greater risk than if he had walked the more circuitous, but unobstructed, path to help his co-worker. And that decision may well haunt him, and even prevent the jury from returning a verdict in his favor, at trial. But "[t]he reasonableness of a plaintiff's decision to encounter [a known] risk is a factual determination" for the jury, and even "ample evidence" that the plaintiff's decision "was ill-advised and negligent" will not justify summary judgment on the issue. *LaRue*, 966 S.W.2d at 426–27 (quoting *Silcox v. Coffee*, No. 01A01-9304-CV-00166, 1993 WL 350134, at *5 (Tenn. Ct. App. Sept. 15, 1993)). Because the Court "cannot say that a rational trier of fact could not find that the percentage of fault attributable to Plaintiff was less than 50%[,] . . . there are genuine disputed issues of material fact with regard to comparative fault in this case, making summary judgment inappropriate." *Reynolds v. Rich*, 511 S.W.3d 526, 536 (Tenn. Ct. App. 2016).

**CONCLUSION**

For these reasons, Reconn's Motion for Summary Judgment (Doc. No. 90) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE